OCTOBER TERM, 1884, No. 104.          OCTOBER 31, 1884.

## Green *v.* Belford.

1. A sale under a municipal lien filed against "J. Bedford," of premises which had been properly registered by the owner, prior to the filing of the lien, in her correct name, "Jane Belford," at the office of the city en-

[Green v. Belford.]

gineer of Pittsburgh, in accordance with the registry act of 24th February. 1871, P. L., 126, will not divest the title.

2. The change of names was too great to give reasonable notice to her that she was the person intended.

3. Where a sale had been made under the circumstances stated above, a deed acknowledged to the purchaser, Ellen C. Green, by the sheriff, and by her duly registered and recorded, and another municipal lien against the same premises, was filed originally against Ellen C. Green, afterwards by amendment against "Unknown Owner," it was *Held*, that judgment, execution, and sale thereunder were also ineffective to divest the title of Jane Belford to the land in question.

Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN, and CLARK, JJ.

Error to the Common Pleas, No. 1, of *Allegheny County.*

Ejectment by John H. Belford and Jane Belford, his wife, in right of said Jane Belford, against Ellen C. Green, for a lot of ground situate on Forty-second street, (formerly Chestnut street,) in the Seventeenth ward of the city of Pittsburgh, (formerly the borough of Lawrenceville.) Plea, not guilty.

On the trial before STOWE, J., these facts appeared:

Mrs. Jane Belford, the plaintiff, derived title to the lot in question by deed, dated and acknowledged, May 1, 1867, from Henry Wilhelm *et ux.*, and Paul Seibert *et ux.*, in whom it was admitted the title thereto then was vested. This deed was duly recorded May 4, 1868. The price paid for the lot was $485. The registry act for the city of Pittsburgh, passed February 24, 1871, requires that the city, under an ordinance and appropriation, shall cause books and plans, etc., of said city to be prepared in sections, etc., in which shall be entered the size of all lots, names of owners, etc., and that the same shall be kept in the office of, and by the city engineer, who is directed to give thirty days' notice to property-holders to bring in their deeds for registry.

The plaintiff, in compliance with this act, took her deed to the office of the city engineer, where the register of deeds placed upon it the proper certificate, September 3, 1872, and entered it on his registry as follows:

| PRESENT OWNER. | FORMER OWNER. | DATE OF DEED. | NO. OF HOUSE. |
|---|---|---|---|
| Jane Belford. | Henry Wilhelm and Paul Seibert. | May 1, 1867. | |

In accordance with the practice of his office, he took from the deed a description of the property and had the

[Green *v.* Belford.]

plaintiff, (who could neither write nor read writing,) make her mark to it. This paper, which was filed, as is customary, in the register's office, read as follows:

| "Present Owner, JANE BELFORD. | Former Owner, HENRY WILHELM and PAUL SEIBERT. | Date of Deed, May 1, 1867. | No. of House |
|---|---|---|---|

Bring deed with this that it may be indorsed.

Description of property, which must be an exact copy in the wording of the deed.

All that certain lot or piece of ground situate in the Seventeenth ward, city of Pittsburgh, bounded and described as follows, to wit: Said lot fronts on Chestnut street, (now Forty-second street,) twenty-two feet, and extends back, preserving the same width, to an alley twenty feet wide, and bounded by Grant street and lot No. 39.

Being lot No. 40, in Wilhelm and Seibert's plan of lots in D. B., vol. 226, page 454.

Signature of owner or agent.

her<br>
Mrs. JANE &times; BEDFORD."<br>
mark.

The register of deeds testified that he "didn't know who wrote the name 'Jane ×(her) Bedford;' there seems to have been no witness there." The plaintiff testified that she didn't "remember signing the paper."

During the year 1875, Forty-second street was improved under the provisions of the act of Assembly of January 6, 1864. Default having been made in the payment of the assessment for this improvement, a lien was entered against the lot the title for which was registered as above recited, after the various notices required by sections seven and eight of the act had been given against the owner in the name of *J. Bedford.* Judgment having been obtained, a *lev. fa.* was issued thereon, and the lot sold to Ellen C. Green, the defendant below, for the sum of $250. The deed of R. H. Fife, then sheriff, dated February 7, 1878, made in pursuance of this sale, was, after acknowledgment, duly registered in the city engineer's office and recorded.

Mrs. Green shortly after built upon the lot at a cost of about $1,700.

Another municipal lien had been filed by the city of Pittsburgh, against the property in dispute for grading and paving an alley in its rear, on March 1, 1878, against the

[Green *v.* Belford.]

owner, in the name of Ellen C. Green.    This was amended October 23, 1880, by substituting as defendant, "Unknown Owner."    Judgment was obtained, execution issued, and the property again sold by the sheriff to Mrs. Green for $240, January 8, 1881, and the sheriff's deed to Ellen C. Green duly acknowledged, registered, and recorded.

Mrs. Belford testified that she was never known by the name of Bedford, and never so called, that she had always paid the taxes on the lot; had paid some about a week before the date of the sale to Mrs. Green.

The plaintiff submitted, *inter alia*, the following points :

*Second.* That the judicial sale of the property in the name of J. Bedford, passed no title to the property as to Jane Belford.    Affirmed.    Exception.

(Second assignment of error.)

*Third.* That the judicial sale in evidence, as against unknown owners, is absolutely void, because the evidence of both parties shows that the name of the owner was duly registered in the office of the city engineer long before the grading was done or this lien filed, under which said sale was made.    Affirmed.    Exception.

(Third assignment of error.)

*Fourth.* The defendants have shown no evidence sufficient in law to divest the plaintiff's title to the lot in controversy.    Affirmed.    Exception.

(Fourth assignment of error.)

The defendant presented, *inter · alia*, the following points :

*First.* That under the principle of *idem sonans*, an assessment and sale in the name of Jane Bedford will convey the title of Jane Belford.    Refused.    Exception.

(Sixth assignment of error.)

*Second.* If the jury find that the first registry of the lot was in the name of Jane Belford and the registry following that showed the title in Ellen C. Green, by conveyance by sheriff's sale in the name of Jane Bedford, then there was such a contradiction on the record as to authorize an assessment and sale of the lot in dispute in the name of Unknown Owner—and such sale in the name of Unknown Owner would convey good title.    Refused.    Exception.

(Seventh assignment of error.)

The Court charged the jury that "plaintiff is entitled to recover in this action, under all the evidence, with six cents' damages, and costs."

(Tenth assignment of error.)

Verdict for plaintiffs for six and one fourth cents damages and costs, and judgment thereon ; whereupon de-

fendant took this writ, assigning for error, *inter alia*, the affirmance of plaintiff's and refusal of defendant's points given above, and the action of the court instructing the jury peremptorily to find for the plaintiffs.

*Robb & McClung* for plaintiff in error.

Under the doctrine of *idem sonans*, the courts have recognized and considered the identity of names arising, not only by reason of similarity of sound, but because of similarity in appearance as well: Cadden's estate, 26 Pittsburgh, L. J., 171 ; Bergman's app., 7 Norris, 123 ; Colburn *v.* Bancroft, 23 Pickering, 57.

In the present case, Belford and Bedford, when spoken, may be easily mistaken the one for the other, and when written in the hand of the average penman, the resemblance is close. If J. Belford saw that her lot, with its marked and characteristic description, "fronting twenty-two feet on the south side of Forty-second street, at the corner of Grant street," was assessed in the name of J. Bedford, she could not but know that she was the person sought to be charged. If she did not see it, her lack of information was not in consequence of the misnomer. A married woman, living with her husband, her name did not appear in the city directory. Successful inquiry in the neighborhood of the property was the only means of procuring personal service of the notices and writs. And so great is the similarity in the names that inquiry prosecuted there for " J. Bedford, owner of the lot on the corner of Forty-second and Grant street," would as readily lead to the discovery of the true owner as if the inquiry had been for J. Belford. The defendant's first point should have been affirmed.

The position that the sale in the name of Unknown Owner carried good title needs no elaboration. There was a contradiction on the city register; the validity of Mrs. Green's title depended in part upon representations made by Mrs. Belford outside the record that her name was Bedford. It would be unreasonable to impose upon the city the duty of deciding between conflicting titles. To proceed against the lot in the name of either the one or the other of the claimants, would be to expose to sale a questionable title. The act of January 6, 1864, section 21, (P L., page 1136,) provides the only safe course, and the city followed it by substituting "Unknown Owner" as defendant.

*John Barton* for defendant in error.

[Green *v.* Belford.]

It is argued that the names Belford and Bedford are the same in sound, and when written present the same appearance to the eye; the difference is in the first syllable—one is Bel and the other is Bed; there is as much difference both to the eye and ear as there is between a dinner bell and bedstead.

It was to avoid the very uncertainness as to names and description in entering municipal liens referred to by plaintiffs in error that the registry law of 1871 was passed, requiring, under penalty, that all property-owners should bring in their deeds to the city engineer to register, and all sheriffs, trustees, &c., making judicial sales should cause the deed of conveyances to be registered before delivered to the purchaser; and the same act gave to those who complied with the law a complete protection, and provides: "Whensoever such descriptions shall have been furnished, and the certificate of the engineer or his assistant shall be received, no property so returned shall be subject to sale for taxes or other municipal claims thereafter, to accrue as lien of record thereon except in the name of the owner as returned, and after recovery by suit and service of the writ on him, as in case of a summons, *scire facias*, or other appropriate writ." And again, in the eighth section of the act, the Legislature, in speaking of the title that shall be acquired by the purchaser at sales upon municipal liens, further enacts: "But if the said duty of making the returns, as required by the act, shall have been discharged by the party who shall have acquired title in whatsoever manner before the tax accrued, as a lien of record for which the same shall have been sold, the purchaser at the tax sale shall not acquire the title of such persons who shall have performed said duty, or of his heirs or assigns, unless the same shall have been made in the name of such owner, after service of process upon him, as in case of suit by summons, *scire facias*, or other appropriate writ."

November 10th, 1884.—Per Curiam: Mrs. Jane Belford performed her duty towards effecting a correct registration of her title to the land in question. She should not suffer for the willful wrong or gross carelessness afterwards committed by the municipal authorities. The change of names was too great to give reasonable notice to her that she was the person intended.

Judgment Affirmed.